UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No:  1:22-cv-20923-JLK

JOHN DOE (V.H.) as parent and
Natural guardian of T.H., a minor,

      Plaintiff,

v.

HYATT HOTELS CORPORATION
d/b/a Hyatt Corporation,
GRAND HYATT BAHA MAR, and
CTF BM OPERATIONS LTD.
d/b/a Baha Mar.

      Defendants.      /

**DEFENDANT, CTF BM OPERATIONS LTD.'s MOTION TO DISMISS
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**I.    INTRODUCTION**

This case arises from an alleged tort that occurred entirely in The Bahamas at a resort

owned and operated by Bahamian entities, involving a Pennsylvania Plaintiff with no connection

to Florida.  The issues this Motion presents are:  1) Whether this Court may assert personal

jurisdiction over a Bahamian entity, CTF BM OPERATIONS LTD. ("CTF"), that is not

incorporated in Florida, does not have its principal place of business in Florida, and conducts no

direct business in Florida; and 2) whether in the complete absence of any connection between

Florida, the tort the Plaintiff alleges, and the evidence necessary to prove it, Florida is the

appropriate forum in which to try this case.  The answer to both questions is:  No.  Therefore, CTF

asks that this Court dismiss this case pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6).

## II.      <u>PERSONAL JURISDICTION</u>

Federal courts apply a two-part test to determine whether a court may assert personal jurisdiction over a defendant.  First, the court determines whether that defendant's activities satisfy Florida's long-arm statute.  Second it examines whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements.  *See Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1212–13 (S.D. Fla. 2017).

### A.      <u>Florida Long-Arm Statute</u>

As grounds to assert personal jurisdiction over CTF under Florida's long-arm statute, the Plaintiff cites §48.193(1)(a)(1) ("[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state") and §48.193(2), ("[c]ommitting a tortious act within this state").[1]

CTF is a Bahamian corporation with its principal place of business in The Bahamas. *Affidavit of Jeff Burge ("Burge") attached as "Exhibit 1," ¶3.*   It maintains no offices in Florida and carries on no business here.  *Burge ¶¶ 23-30.*  CTF's sole connection to this forum is that it conducts limited advertising in Florida, and Hyatt Corporation ("HC") employee, Braeden Quigley, helps promote the Resort here. *Declaration of Christina Urbanski ("Urbanski"), ¶ 46.*[2] But HC is an entirely separate entity that has no agency relationship with CTF; furthermore, it is a Delaware corporation based in Illinois with less than ten percent of its employees in Florida. *Urbanski ¶¶ 14, 18, 43-48.*  In any case, HC's sales activities do not serve to establish that CTF has an office or agency in Florida in satisfaction of the long-arm statute.  *See*, *Sculptchair, Inc. v.*

---

[1] *Complaint, ¶ 21.*

[2] Ms. Urbanski's affidavit accompanies the co-defendants' motion to dismiss. CTF adopts all affidavits filed by the co-defendants in support of this Motion.

*Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996) (holding that a non-agent's sales activities may not be imputed to a foreign corporation to satisfy §48.193(1)(a)(1), Fla. Stat.).

Under the long-arm statute's "tort prong," a tort occurs where the last event rendering a defendant liable happens. *Russo v. Fink*, 87 So. 3d 815, 818 (Fla. 4th DCA 2012). All claims in the instant Complaint are based on allegations of negligent security that lead to a sexual assault, meaning the assault itself would be the final act rendering a defendant liable. The Complaint asserts that this act occurred in The Bahamas. *Complaint, ¶¶ 27, 28.* Thus, no tort was committed in Florida. *Berry v. Coleman*, 172 F. App'x 929, 932 (11th Cir. 2006). In sum, there is no long-arm jurisdiction over CTF under either the "carrying on a business"[3] or the "tortious act"[4] provision of the Florida long-arm statute.[5]

## B.    <u>Constitutionally Sufficient Minimum Contacts</u>

Under the Fourteenth Amendment due process prong of the personal jurisdiction analysis, courts distinguish between "specific jurisdiction" and "general jurisdiction," the former being instances in which jurisdiction "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S.Ct. 1868 (1984).[6] The Plaintiff

---

[3] §48.193(1)(a)(1), Fla. Stat.

[4] §48.193(2), Fla. Stat.

[5] The Complaint also erroneously cites 48.193(b)(2), Fla. Stat., which does not exist. Presumably, the intended citation was to 48.193(2), Fla. Stat., ("[e]ngaging in "substantial and not isolated activity within the state, whether or not the claim arises from that activity" at Complaint, ¶ 20 & 22. Under federal law, this prong of Florida's long-arm statute "extends [only] to the limits on personal jurisdiction imposed by the Due Process Clause." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). Thus, the if there analyses for both overlap.

[6] To illustrate the difference between the two theories, the U.S. Supreme Court offered the following two hypothetical scenarios in *Daimler AG v. Bauman*, 571 U.S. 117 (2014) in which the plaintiff sought to assert jurisdiction in California over Daimler AG, a German corporation: First, a California plaintiff is injured in a California accident involving a Daimler-manufactured car and sues Daimler in California alleging that the vehicle was defectively designed. *Id.* at fn. 5. This is an illustration of alleged specific jurisdiction. *Id.* Second, if a similar accident took place in Poland and the injured Polish plaintiffs sued Daimler in California court, the question would be one of general jurisdiction. *Id.* at 121.

here seeks to assert only general jurisdiction over CTF; that is, he is not claiming any specific connection between Florida and the facts giving rise to this action. Instead, he premises jurisdiction on the erroneous proposition that CTF engages in "systematic and continuous" activities in Florida unrelated to the actual tort.

In the landmark *Daimler AG v. Bauman*, 571 U.S. 117 (2014) case, the U.S. Supreme Court narrowed the scope of "general jurisdiction" holding that in all but the most exceptional cases, a court may assert general jurisdiction over a corporation only in the states where it is incorporated and where it has its principal place of business. *Id*. at 137. *Daimler* narrowly defined an "exceptional case" as one where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation ***at home*** in that state." *Daimler* at n. 19 (emphasis added). Stated differently:

> A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum ***closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business***. Thus, only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.

*Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1214 (S.D. Fla. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117 (2014)) (internal citations omitted, emphasis added).

To leave no doubt on this point, the *Daimler* court cited *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) as an example of the limited exceptional circumstances that would allow a court to assert general jurisdiction. *Daimler* at 129. In *Perkins*, the defendant operated a mining company based in the Philippines that relocated to Ohio when Japan occupied the Philippines in World War II. *Id*. at 447-48. The defendant in *Perkins* "maintained an office in Ohio, kept corporate files there, and oversaw the company's activities from the State." *Daimler*

at 148.  The *Daimler* court held that these circumstances justified asserting general jurisdiction in Ohio only because that state had become "a surrogate for the place of incorporation or head office"; in other words, the company had all but moved its headquarters there. *Daimler* at 130 n.8 (internal quotation marks omitted).

To "closely approximate" CTF's functions in The Bahamas where it is based so as to render CTF "at home" in Florida, the Plaintiff would have to establish that CTF has officers and directors in Florida, operates hotel properties here, or manages and operates the Resort from here.  *Daimler* at 148.  CTF does none of these things in Florida.  In fact, CTF's limited connections to Florida come nowhere near those in *Perkins* so as to satisfy *Daimler's* narrow test for general jurisdiction.  CTF operates the Resort's hotel in Nassau, Bahamas.[7]  It is incorporated and has its principal place of business in The Bahamas.  *Burge, ¶ 3.*[8]  CTF is not registered to do business in Florida, has no designated agent for service of process in Florida.  *Burge ¶¶ 24.*  It does not own or lease any real property in Florida.  *Burge ¶¶ 25-26.*  It does not manage or operate any hotels in Florida.  *Burge ¶ 27.*  It has no bank accounts or employees in Florida.  *Burge ¶¶ 28-29.*  Its sole activities in Florida consist of limited advertising in the state along with Resort promotions conducted by Florida resident, Braeden Quigley.  *Burge ¶¶ 30.*  Mr. Quigley is an HC employee who promotes CTF.  *Affidavit of Braeden Quigley ("Quigley"), ¶ 4.*[9]  Though he lives in Florida, he works

---

[7] *Burge ¶¶ 12, 21.*  A non-party entity called Sky Warrior Bahamas, Ltd. ("SWB") operates the casino portion of the Resort.  SWB also is incorporated and has its principal place of business in The Bahamas.  *Burge ¶ 9.*

[8] CTF owns most of the Resort, though several Bahamian entities own small portions of the property.  *Burge, ¶ 44.*  Contrary to the allegations in the Complaint, no other named Defendant owns any portion of the Resort, manages it, or has any role its day-to-day operation.  *Burge ¶ 43.*

[9] Mr. Quigley's affidavit accompanies the co-defendants' motion to dismiss.

remotely for HC, a Delaware corporation based in Illinois that is entirely separate from CTF.[10]

*Quigley, ¶ 2.*

Eleventh Circuit cases since *Daimler* have almost uniformly found that even much more substantial activities than these are insufficient to confer general jurisdiction.  In *Carmouche v. Tamborlee Management, Inc.,* 789 F.3d 1201 (11th Cir. 2015), for example, a passenger injured during a cruise ship excursion in Panama attempted to sue the Panamanian excursion operator in Florida.  *Id*. at 1202-03.  In support of jurisdiction, the plaintiff demonstrated that the Panamanian defendant had a bank account and two addresses in Florida.  *Id*.  It had also purchased insurance policies from Florida companies and filed a financing statement with the Florida Secretary of State. *Id*.  In addition, it was a member of a non-profit trade organization in Florida and had given "consent[ ] to jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with" a cruise line operator.  *Id*.  Notwithstanding all of these contacts, the Eleventh Circuit ruled that the defendant did not have sufficient contacts with Florida to satisfy *Daimler's* "general jurisdiction" test. *Id*. at 1206.  *See, also, Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1311–12 (11th Cir. 2018); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017); *Twinstar Partners, LLC v. Diamond Aircraft Indus., Inc.*, No. 11-61684-CIV, 2014 WL 4102260, at *1 (S.D. Fla. Aug. 18, 2014); *Aronson v. Celebrity Cruises, Inc.*, No. 12-CV-20129, 2014 WL 3408582 (S.D. Fla. May 9, 2014); and *World Traveling Fools, LLC v. Diamond Aircraft Indus*., Inc., No. 11-61670-CIV, 2014 WL 4102160, at *1 (S.D. Fla. Aug. 18, 2014).

As to CTF's limited sales and advertising in Florida, *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1348 (S.D. Fla. 2017) explicitly recognized that, post-

---

[10] Hotels in The Bahamas must be licensed by the Bahamian government.  CTF has the exclusive license to operate the hotel where the Plaintiff and his family were staying at the time of the Incident.  No other Defendant or Hyatt entity has authority from the Bahamian government to operate the hotel.  *Burge ¶ 12.*

*Daimler*, even if a defendant has a sales office in Florida and is "***heavily marketing***" here, this is insufficient to confer general jurisdiction. *Id*. at 1349. *See, also, Schulman v. Glob. Citizens Travel, LLC, 13-CV-23766, 2015 WL 11018438, at \*5 (S.D. Fla. Jan. 20, 2015), aff'd sub nom. Schulman v. Inst. for Shipboard Educ.,* 624 Fed. Appx. 1002 (11th Cir. 2015) (holding that the fact that the defendant sold ten to twenty percent of its boats in Florida was not enough to confer personal jurisdiction over it); *and Metre v. Wright Med. Tech., Inc.*, 1:20-CV-00132-MW-GRJ, 2020 WL 5507552, at \*2 (N.D. Fla. Aug. 11, 2020) (explicitly holding that jurisdiction may not be asserted over a non-resident defendant based on its marketing and sales in the forum after *Daimler*). Nor is the mere fact that CTF may derive income from Florida sufficient to confer general jurisdiction over it. *See, Schulman v. Glob. Citizens Travel, LLC, 13-CV-23766, 2015 WL 11018438, at \*5 (S.D. Fla. Jan. 20, 2015); and Hard Candy, LLC v. Hard Candy Fitness, LLC*, No. 13–23705–CIV–ALTONAGA/O'Sullivan, 2015 U.S. Dist. LEXIS 67479, at \*48 (S.D. Fla. May 13, 2015) (finding no general jurisdiction when a defendant received $269,584.83 in royalties from goods sold in Florida); *GurglePot, Inc. v. New Shreve, Crump & Low LLC, No. C13–6029 RBL*, 2014 U.S. Dist. LEXIS 82512, at \*8 (W.D. Wash. June 17, 2014); *Eco Pro Painting, LLC v. Sherwin–Williams Co.,* 807 F. Supp. 2d 732, 736–37 (N.D. Ill. 2011); *Lab Corp. of Am. Holdings v. Schumann*, 474 F. Supp. 2d 758, 763 (M.D.N.C. 2006).

The Complaint also alleges contacts between CTF and Florida relating to an entity called Hyatt Latin America and The Caribbean ("HLAC") and its employee Thierry Guillot. *Complaint ¶¶ 5, 24, & 25*. HLAC is an entirely separate entity with no management, employees, or ownership in common with CTF. *Burge ¶ 51*. HLAC has a mere four employees in Florida, is incorporated in Delaware, and is based in Illinois. *Urbanski, ¶ 31*. HLAC employee, Thierry Guillot, has no

duties or responsibilities at HLAC relating to the resort. *Urbanski, ¶ 58.* Thus, nothing about the contacts between HLAC and CTF allow the Plaintiff to leap the *Daimler* hurdle.[11]

Even if Messrs. Quigley and Guillot were CTF employees this would be insufficient to confer jurisdiction over CTF. In *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), which construed *Daimler*, the plaintiff sought to assert general jurisdiction over a defendant in Montana arising out of injuries incurred entirely outside of that state. *Id*. at 1554. While the corporation was not incorporated in Montana and did not maintain its principal place of business there, it had over 2000 miles of railroad track and 2000 employees in the state. *Id*. at 1559. The U.S. Supreme Court nevertheless ruled that Montana lacked general jurisdiction over the defendant. *Id*. at 1559-60.

Here, the contacts between Florida and CTF are even more prolix than in *Tyrrell* as they involve 1/1000[th] the number of people, none of whom is a CTF employee, and all of whom work for non-Florida entities that merely provide services to CTF. In sum, *Daimler* and its progeny have narrowed the scope of "general jurisdiction" to the point that it can be asserted over a corporation outside of its place of incorporation and principal place of business only where the corporation is effectively treating the foreign forum as its headquarters. There are no facts in this case to suggest that CTF has any activities in Florida that mimic its activities in The Bahamas (*i.e.*, the management and operation of a large resort hotel) so as to render CTF "at home" in Florida.

### III. FORUM NON CONVENIENS

Even if this Court could assert personal jurisdiction over CTF, The Bahamas—not Florida—is not the appropriate forum for this case under the doctrine of *forum non conveniens*.

---

[11] The Complaint also repeatedly—and falsely—asserts that the Defendants were engaged in a "joint venture" even though the Defendants have no such arrangement. *Burge ¶¶ 45, 46.* With these allegations, the Plaintiff appears to be attempting to establish general jurisdiction under some sort of agency theory, but *Daimler* eliminated this as theory as a means of establishing general jurisdiction. *Daimler* at 760.

To dismiss a case under this doctrine, a defendant must establish that: "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and that (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011); *see also, Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).[12]

## A)      Availability and Adequacy of Forum

A forum is generally "available" if the defendant is amenable to process there.  *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001).  In this case, the entities that manage and operate the Resort are CTF and SWB.  *Burge ¶¶ 9, 11.*  Both are Bahamian entities located in The Bahamas and, thus, are subject to service of process there.  *Id.*  Furthermore, CTF and SWB have stipulated that they would appear in a Bahamian court in this action and that they would accept service of process in The Bahamas.  *Burge ¶¶ 63, 64.*  This satisfies the "availability" prong of the *forum non conveniens* analysis.  *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir.2011).

Legal adequacy is a low bar.  To clear it, a defendant need not show that an alternative forum offers relief equal to the chosen forum; rather, it need show merely that an alternative forum "offers at least some relief."  *Leon* at 1311.  "If a forum provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries, the forum satisfies the demands of adequacy."  *Giglio Sub s.n.c. v. Carnival Corp.*, 12-21680-CIV, 2012 WL 4477504, at *8 (S.D. Fla. Sept. 26, 2012) (internal quotations omitted).  Conversely, to be legally inadequate, the alternative forum must, essentially, provide "no remedy at all."  *Piper Aircraft*

---

[12] As with a motion to dismiss, when ruling on a motion to dismiss for *forum non conveniens*, a court may "consider matters outside the pleadings if presented in proper form by the parties." *Turner v. Costa Crociere S.P.A.*, 1:20-CV-21481-KMM, 2020 WL 5868148, at *2 (S.D. Fla. Sept. 10, 2020).

*Co. v. Reyno*, 454 U.S. 235, 254 (1981); *McCoy v. Sandals Resorts Int'l, Ltd.*, 19-CV-22462, 2019 WL 6130444, at *13 (S.D. Fla. Nov. 19, 2019).

The alternative forum need not be "perfect" and some inconvenience to a plaintiff "will not indicate that a forum is inadequate." *Id*. at 1311-2. Indeed, absent a showing of extreme levels of delay or corruption, claims of inadequacy fail. *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1313 (11th Cir. 2001) (holding that chronic shortcomings with Ecuadorian legal system, lack of financial resources, congestion, delays, backlogs, and the fact that judges of Ecuador had gone on strike and thirty-one justices of Ecuadorian Supreme Court had been removed by congress did not render Ecuador inadequate forum.). Nor does the fact that another forum "is less substantively generous" in terms of damage awards or "lacks jury trials" render it inadequate. *Cleveland v. Kerzner Int'l Resorts, Inc.*, 1:14-CV-23897, 2015 WL 5695276, at *5 (S.D. Fla. Sept. 29, 2015).

By all measures, The Bahamas is a more than adequate forum. The Bahamian legal system is derived from English common law and recognizes actions for negligence like the Plaintiff is bringing in this lawsuit. *Affidavit of Leif Farquharson ("LF") attached as "Exhibit 2," ¶¶ 14, 18*. Upon proving liability for negligence, a claimant in The Bahamas is entitled by law to receive monetary compensation for "special damages" (*e.g.*, medical costs and lost wages) as well as pain and suffering associated with the opposing party's negligence. *LF ¶ 22*. Bahamian courts are not subject to corruption or undue delay. *LF, ¶¶ 13, 20*. Finally, over the past fifteen years this Court has repeatedly and consistently ruled that The Bahamas is a legally "adequate" forum when ruling on *forum non conveniens* motions.[13]

---

[13] *See Lambert v. Melia Hotels Int'l S.A.,* 526 F. Supp. 3d 1207, 1215 (S.D. Fla. 2021), *reconsideration denied*, 20-21343-CIV, 2022 WL 109264 (S.D. Fla. Jan. 12, 2022); *Rosen v. Execujet Services LLC*, 241 F. Supp. 3d 1303, 1308 (S.D. Fla. 2017); *Cleveland v. Kerzner Int'l Resorts, Inc.*, 1:14-CV-23897, 2015 WL 5695276, at *5 (S.D. Fla. Sept. 29, 2015), aff'd, 657 Fed. Appx. 924 (11th Cir. 2016); *Sabino v. Kerzner Int'l Bahamas Ltd.*, No. 12-22715-CIV, 2014 WL 7474763, at *6 (S.D. Fla. Jan. 10, 2014); *Klyszcz v. Cloward H2O LLC*, 11-23023-CIV, 2012 WL 4468345, at *3 (S.D. Fla. Sept. 26, 2012); *Miyoung Son v. Kerzner Intern. Resorts, Inc.*, 07-61171-CIV, 2008 WL 4186979, at *7

In sum, The Bahamas provides an available and adequate forum.

**B)** <u>**Private Interest Factors**</u>

There are several private interest factors a court may consider as part of the *forum non conveniens* analysis: (1) the relative ease of access to sources of proof, (2) the ability to obtain witnesses via compulsory processes, (3) the possibility to view the premises, and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive, and the location of key witnesses and documentary evidence. *St. Aubin v. Island Hotel Co. Ltd.*, 1:16-CV-22023, 2017 WL 998298, at *3-4 (S.D. Fla. Mar. 15, 2017). These factors are not exhaustive. *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009). "A trial court will look at the private interests first" and then only if they are in "equipoise" turn to public interest factors. *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009).

A proper consideration of private interest factors begins with the elements of the plaintiff's causes of action and whether there is any "meaningful connection to [the] forum." *Foshee v. Banks*, 20-62699-CIV, 2022 WL 1284248, at *6 (S.D. Fla. Mar. 22, 2022). The Complaint pleads four counts of negligence based on the same essential allegations; namely, that the Resort failed to "provide reasonably safe premises *on the resort property*," "have an adequate security system in effect to prevent guests from being sexually assaulted *on the resort property*," "provide an adequate number of supervisory personal to monitor *the resort property*," or adequately perform "security checks *on the resort premises*." *Complaint ¶¶ 33, 38, 45, and 52.* The Plaintiff contends that his daughter was "on the hotel premises chatting on the phone when the Assailant, [sic] raped

---

(S.D. Fla. Sept. 5, 2008); *Pinder v. Moscetti*, 666 F. Supp. 2d 1313, 1319 (S.D. Fla. 2008); *Horberg v. Kerzner Intern. Hotels Ltd.*, 744 F. Supp. 2d 1284, 1290 (S.D. Fla. 2007).

and/or sexually assaulted [her]." *Complaint ¶ 28.* The Plaintiff further alleges that the Hotel hired inexperienced staff and inadequately trained them. *Complaint ¶ 45.*

The elements of all these negligence claims are duty, breach of that duty, proximate cause, and damages. *Tank Tech, Inc. v. Valley Tank Testing*, L.L.C., 244 So. 3d 383, 392 (Fla. 2d DCA 2018). A premises liability claim is a "negligence claims with the added elements of possession/control of the premises, and notice of the dangerous condition." *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. 4th DCA 2020). "Undertaking" is a duty question. *Goldberg v. Florida Power & Light Co.*, 899 So. 2d 1105, 1115 (Fla. 2005). Thus, the essential elements at issue in this case are those of a standard negligence claim plus the elements of notice and control of the Property.

Accordingly, the questions subject to proof in this case will be: 1) who controlled the Resort property; 2) who provided training, supervision, and security there; 3) was the security adequate; 3) was T.H. assaulted; 4) if so, did a negligent lack of security cause the assault; 4) did the Resort undertake a duty to prevent such an assault; 5) did the alleged assailant pose a risk of committing an assault based on his prior behavior or his behavior that evening; 6) if so, did the Resort know or should it have known of this risk; 7) if so, did the Resort offer any warnings of this risk; 8) if the Resort was liable, what are the Plaintiff's economic damages and what, if any, emotional or psychological harm did T.H. suffer.

### 1. *Ease of Access to Sources of Proof*

The Eleventh Circuit has recognized that:

Perhaps the most important 'private interest' of the litigants is access to evidence ... A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to

prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof.

*Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).

In this case, not a single witness, document, exhibit, probative object, or test sample is being held in Florida or can be authenticated here. The alleged assault occurred in The Bahamas. All of the relevant witnesses to the event are Bahamian. *Burge, ¶¶ 57-59.* The Plaintiff and T.H. are residents of Pennsylvania who do not have any contacts with Florida. Consequently, all of T.H.'s medical treaters, doctors, friends, and family members with testimony or documentation pertaining to damages are also likely to be in Pennsylvania (or, in any case, not in Florida).

Furthermore, any items that are part of the Bahamian criminal investigation into this case (*e.g.*, V.H.'s clothing, tissue samples, swabbing for possible DNA, photographs, and statements) will be in The Bahamas. *Affidavit or Mark Dunn attached as "**Exhibit 3**," ¶ 6.* CTF will wish to examine, test, and present this evidence at trial and the witnesses who can authenticate it are available and subject to process only in The Bahamas. Thus, almost all significant sources of non-testimonial proof in this case are in The Bahamas.

### 2. *Access to Willing Witnesses*

Relevant willing witnesses in this case will include Resort employees familiar with security procedures and Resort employees and security personnel on duty the night the alleged Incident occurred. The Defendants will also need access to witnesses who can authenticate documents showing the Plaintiff's past history staying at the Resort, his booking details for this stay, food and alcohol purchase records, and surveillance videos of Mr. Nixon's and T.H.'s movements the day of the Incident. All of these witnesses are Bahamian residents who are not subject to process in Florida. *Burge, ¶¶ 57, 58.* Many are not, or may no longer be, CTF or SWB employees when discovery and trial in this case occur.

### 3. _Ability to Obtain Witnesses Via Compulsory Processes_

The most important non-party witness in this case is the person who allegedly committed the rape, Henry Nixon.  Mr. Nixon was not an employee of any of the Defendants; rather, he is a private citizen and resident of **_The Bahamas_**.  _Burge, ¶ 59._  Furthermore, the Plaintiff contends that the perpetrator had a history of criminal activities in **_The Bahamas_** that should have put the Defendants on notice of his "dangerous motives."  _Complaint ¶ 2._  Mr. Nixon denies that he has a prior criminal record in The Bahamas and denies that he raped T.H.[14]  Thus, his testimony will be critical evidence in the case and he is subject to process only in The Bahamas.  Furthermore, as noted above, all evidence that might corroborate either Mr. Nixon's or T.H.'s version of what happened is in The Bahamas.  This includes swabbing, DNA testing, and witness statements in the criminal case.  _Dunn, ¶ 6._  It also includes records necessary to rebut the Plaintiff's claims about Mr. Nixon's criminal history in The Bahamas.  Furthermore, the Bahamian authorities and medical personnel who conducted testing and took statements are not Resort employees and will be subject to compulsory process only in The Bahamas.

### 4. _Possibility of Viewing the Premises_

The Plaintiff's version of what happened in this case is at odds with what CTF will argue at trial.  The Complaint contends that T. H. was the victim of a non-consensual sexual assault on the Resort premises.  Furthermore, the Plaintiff has implied in the Complaint and in photos he released to multiple press outlets that Nixon used force.[15]  However, the evidence in the case suggests that T.H. went willingly with Nixon and later conceded that she engaged in consensual sexual activity with him.  Accordingly, CTF (presumably all Parties) will need access to the

---

[14]See video interview at the following link beginning at 3:30:  https://www.nbcmiami.com/news/local/family-suing-after-daughter-was-allegedly-raped-at-bahamas-resort/2736788/

[15]_See, Complaint ¶¶ 28 & 29_ and links to press interviews referenced at _Burge, ¶ 60._

Resort property as they will wish to inspect the premises where the alleged sexual assault in this case occurred.  Such an inspection will be relevant to show that T.H. and her alleged assailant walked arm-in-arm in full public view for a considerable distance to demonstrate that there was no struggle, abduction, or other behavior that would have alerted Resort staff that anything illegal or improper was happening.  Second, a site inspection will allow the Defendants to rebut the Plaintiff's contention that the Resort does not employ enough security personnel by showing precisely where security personnel are deployed and how they do their jobs.  Obviously, this will be impossible if the case is not in The Bahamas.

In conclusion, all private interest factors favor dismissing this matter in Florida and allowing the Plaintiff to refile it in The Bahamas.  Accordingly, the Court need not even reach the issue of public interest factors.  *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009); *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207, 1222 (S.D. Fla. 2021).

## C)   **Public Interest Factors**

Should the Court feel it needs to address the public interest prong of the *forum non conveniens* analysis, the factors to consider include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Turner v. Costa Crociere S.P.A.*, 1:20-CV-21481-KMM, 2020 WL 5868148, at *9 (S.D. Fla. Sept. 10, 2020) (*citing Piper Aircraft*, 454 U.S. at 241 n. 6).

### 1.   *Administrative Difficulties Flowing from Court Congestion*

On similar facts, this Court held only a year ago that, "the Southern District of Florida has one of the busiest dockets in the country, weighing in favor of dismissal" in *forum non conveniens*

cases.  *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207, 1222 (S.D. Fla. 2021).  Thus, this public policy factor weighs in favor of dismissal.

### 2.   Local Interest In Having Localized Controversies Decided At Home

*Lambert* also involved an alleged tort committed against an American citizen on a resort in The Bahamas.  *Id*.  In that case, this Court held that:

> The Bahamas has a strong interest in regulating and determining the standard of care of its resorts. By contrast, Florida's interest is minimal, due to its attenuated connection with the circumstances of this case.

*Lambert* at 1223.  The rationale in *Lambert* is even more persuasive here.  In that case, the plaintiff alleged a slip and fall, a relatively common and benign form of negligence.  Here, however, the Plaintiff alleges sexual assault of a minor, an incendiary allegation with potentially profound effects on a Bahamian tourism industry that provides half of the country's gross domestic product.[16]  Thus, whether local resorts provide adequate security to protect hotel guests is a matter of great public importance to The Bahamas.

By contrast, Florida has even less interest in this case than it did in *Lambert*.  In that case, one of the defendants had a principal place of business in Florida.  *Id*. at 1218.  Notwithstanding this fact, the court there found that venue was improper in Florida.  *Id*.  Not even this slim connection to Florida exists here because not a single party to this case resides in Florida.  Nor is there any issue at stake that is of great public importance to any of the Florida's Florida.

### 3.   Interest In Having The Trial Of A Diversity Case In A Forum That Is At Home With The Law That Must Govern The Action

The third public interest factor is "in having the trial of a diversity case in a forum that is at home with the… law that must govern the case, rather than having a court in some other forum

---

[16] "The Gross Domestic Product (GDP) of The Bahamas is approximately $5.7 billion with tourism accounting for 50 per cent…".  www.bahamas.gov.bs.

untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). In other words, Florida's choice-of-laws rules would apply here. Florida applies the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980). This test turns on four factors:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Here, all of these factors indicate that Bahamian law will apply to this case.

The alleged injury and the conduct giving rise to it occurred in The Bahamas. The Plaintiff is a Pennsylvania resident. The entities that operate and control the Resort are Bahamian corporations with principal places of business in The Bahamas. The other Defendants are Delaware corporations domiciled in Illinois. Finally, the relationship between the Plaintiff and Defendants consists entirely of the Plaintiff's stays as a tourist in The Bahamas. In sum, no choice-of-law factor in this case points toward Florida, and all point directly to The Bahamas. Thus, a U.S. court will likely need to apply Bahamian law in this case, a factor that also weighs heavily in favor dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 259 (1981); *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007); *Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207, 1223 (S.D. Fla. 2021).

### 4. *__Additional Factors__*

Additional factors also weigh in favor of dismissal. For example, the Plaintiff cannot claim any financial hardship by having to litigate in The Bahamas. This Court has routinely found that it is as easy for a plaintiff in the northeastern U.S. to travel to The Bahamas and other parts of the Caribbean as it is to travel to Miami. *See, e.g., Goldstein v. Hard Rock Cafe Intern*. (USA), Inc., 519 F. App'x 653, 655 (11th Cir. 2013) (affirming that because the plaintiffs' "witnesses reside in New Jersey and would have to travel either to Florida or the Dominican Republic for this suit, there would be little difference between travel costs and inconveniences regardless of which forum was chosen"); *and Lambert v. Melia Hotels Int'l S.A.*, 526 F. Supp. 3d 1207, 1218 (S.D. Fla. 2021), reconsideration denied, 20-21343-CIV, 2022 WL 109264 (S.D. Fla. Jan. 12, 2022) (holding that it is as easy to travel to The Bahamas from Pennsylvania as it is to travel to Miami).

Nassau, Bahamas is as close to Philadelphia than Miami, and air ticket prices to both cities are roughly the same. The official language of The Bahamas is English and it is a popular tourist destination for Americans with no history of violent crimes against foreigners, food poisoning, hostage-taking, or any of the other problems that might make an American citizen hesitate to travel there to litigate. Indeed, the Plaintiff has made several trips to the Resort in the past several years (*Burge, ¶ 14*), demonstrating that traveling there raises no concerns and poses no inconvenience to him. In sum, neither financial nor practical factors weigh in favor of Florida as a forum. Accordingly, the Court should dismiss this case under the doctrine of *forum non conveniens*.

## IV.    __FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6), FED.R.CIV.P.__

Should the Court not dismiss CTF for lack of personal jurisdiction or *forum non conveniens*, it should dismiss the Plaintiff's claims for failure to state a claim under Rule 12(b)(6),

Fed.R.Civ.P.  To satisfy this rule, a complaint must contain facts sufficient to support the existence of all required elements of the claims.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 570).  One of the elements of the Plaintiff's claims is that CTF knew or should have known that Mr. Nixon was a rape risk.  *Hammer v. Lee Mem'l Health Sys.*, 218CV347FTM29MRM, 2018 WL 3707832, at *2–3 (M.D. Fla. Aug. 3, 2018).  *Hammer* involved negligent supervision and negligent hiring claims in which the defendant's nurse employee allegedly fondled the plaintiff without her consent.  *Id.* at *1.  The complaint in *Hammer* alleged only that the defendant gave the nurse "unsupervised and unfettered access to female patients while in the hospital" without alleging that the "employer received actual or constructive notice of problems with an employee's fitness… ."  *Id.* at *2.  On these facts, the court dismissed the complaint for failure to state a claim.  *Id.*

Similarly, the only facts the Complaint offers in this case to allege the required element of notice are that Mr. Nixon was "known in the community as a small-time drug peddler" and a reference to a completely unrelated lawsuit against an entity other than CTF arising at a resort in Turkey eight years ago in which a massage therapist allegedly sexually assaulted a hotel guest.  *Complaint, p.2, ¶ 2, and ¶ 34.*  The Complaint does not explain why either of these facts should have alerted CTF that Mr. Nixon had a propensity to commit sexual assault.  Nor does it plead any facts that would have put CTF on notice that Nixon was going to rape T.H. the night of the Incident.  Thus, under 12(b)(6), Fed.R.Civ.P., *Iqbal, Twombly*, and *Hammer*, the Complaint's threadbare allegations are insufficient to establish notice and the Court should dismiss the Plaintiff's claims.

## V.    CONCLUSION

The Complaint in this case fails to plead facts sufficient to establish that CTF is subject to Florida's long-arm statute.  It also fails to allege facts showing that CTF is "at home" in Florida

within the meaning of *Daimler*.  Thus, this Court may not exercise personal jurisdiction over CTF. Even if it could, under the doctrine of *forum non conveniens*, Florida is not the appropriate forum for this case because neither the Incident, the Parties, potential evidence, nor witnesses have any connection to Florida. Finally, the Plaintiff has failed to plead notice with sufficient particularity. For all of these reasons, CTF requests:

(a) That the Court dismiss CTF from this lawsuit for lack of personal jurisdiction;

(b) In the alternative, that the Court dismiss the case under the doctrine of *forum non conveniens* and order that the Plaintiff refile the case in The Bahamas within 120 days; or

(c) In the alternative, that the Court dismiss the Plaintiff's claims against CTF without prejudice for failure state a claim.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 30, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and served it upon MICHAEL A. WINKLEMAN (FBN 36719), mwinkleman@lipcon.com; JACQUELINE GARCELL (FBN 104358), jgarcell@lipcon.com; and L. ALEX PEREZ (FBN 125452), aperez@lipcon.com at LIPCON, MARGULIES & WINKLEMAN, P.A., One Biscayne Tower, Suite 1776, 2 South Biscayne Boulevard, Miami, Florida 33131

BEASLEY, DEMOS & BROWN, LLC
201 Alhambra Circle, Suite 501
Coral Gables, Florida 33134
Tel: (305) 669-3131 / Fax: (305) 442-4377

By:  */s/ Stephanie E. Demos*
          STEPHANIE E. DEMOS
          Fla. Bar No. 0018831
          sdemos@beasleydemos.com
          CHRISTOPHER D. BROWN
          Fla. Bar No. 0045004
          cbrown@beasleydemos.com
          jmiller@beasleydemos.com

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No:  1:22-cv-20923-JLK**
**King/Damian**

JOHN DOE (V.H.) as parent and
Natural guardian of T.H., a minor,

      Plaintiff,

v.

HYATT HOTELS CORPORATION
d/b/a Hyatt Corporation,
GRAND HYATT BAHA MAR, and
CTF BM OPERATIONS LTD.
d/b/a Baha Mar.

      Defendants.          /

## AFFIDAVIT OF JEFFREY BURGE

I, Jeffrey Burge, being duly sworn, depose and say:

1.      My name is Jeffrey Burge and I have personal knowledge regarding the matters set forth in this Affidavit.

2.      I am over the age of twenty-one.

3.      I am the CFO of CTF BM OPERATIONS LTD. ("CTF"), a Bahamas corporation with its principal place of business in The Bahamas.

4.      I am employed by Sky Warrior Bahamas Ltd.  ("SWB").

5.      I have read the allegations contained in the Plaintiff's March 28, 2022 Complaint filed in this matter.

6.      The Plaintiff in this action has sued HYATT HOTELS CORPORATION ("HHC") d/b/a Hyatt Corporation ("HC"), GRAND HYATT BAHA MAR ("GHBM"), and CTF BM OPERATIONS LTD. d/b/a Baha Mar ("CTF").

7.      The Complaint alleges that the acts and omissions giving rise to this claim occurred at the Grand Hyatt Baha Mar located in Nassau, The Bahamas ("Hotel").

8.      The Hotel is contained within, and is a piece of, a large complex that includes several hotels, numerous restaurants, spas, and a casino (the entirety of all hotels, restaurants, spas and casino are referred to hereinafter as the "Resort").

9.      SWB is an entity licensed in The Bahamas that operates the Resort's casino. SWB is a Bahamas corporation with its principal place of business in The Bahamas.

10.      Only entities licensed by the Bahamian government may operate a casino.  SWB is the exclusive entity licensed to operate the casino at the Resort.  No other Defendant or Hyatt entity has authority from the Bahamian government to operate the casino.

11.      CTF operates the Hotel where the Plaintiff and his family were staying when the incident alleged in the Complaint occurred ("Incident").

12.      Hotels in The Bahamas must be licensed by the Bahamian government.  CTF has the exclusive license to operate the hotel where the Plaintiff and his family were staying at the time of the Incident.  No other Defendant or Hyatt entity has authority from the Bahamian government to operate the hotel.

13.      Plaintiff, V.H. and his wife are the parents of T.H.

14.      According to the Resort's records, V.H. had been to the Resort on three occasions before the Incident and his wife had been there on two prior occasions.

15.     At the time of the Incident, V.H. and his wife had separate "player's cards" issued by the casino located at the Resort.  A patron's use of a player's card enables the casino to track a patron's casino play so the player may become eligible for various offers and discounts provided at the Resort through the casino.

16.     One of those offers was sent out by the casino to people holding player's cards in October of 2020 and the Plaintiff and his wife responded to it.  This offer came through the efforts of SWB located in The Bahamas.  SWB has no affiliation with any Hyatt entity.

17.     Neither HHC, HC, nor any other Hyatt entity had anything to do with creating or sending out the October 2020 offer that ultimately led V.H. and his family to book a room at the Resort in March/April 2021.

18.     V.H. and his wife expressed interest in redeeming the October 2020 offer in the weeks after it was issued but were unable to secure the necessary COVID testing that was then required and ultimately rescheduled their planned visit to March/April of 2021 when the Incident occurred.

19.     No one at HHC or HC had anything to do with soliciting or arranging the Plaintiff's visit to the Resort in March/April of 2021.  This was all done through SWB.

20.     Complaint, ¶ 11 alleges that "[CTF] was and is a foreign company… incorporated in the Bahamas, with its principal place of business in the Bahamas at One Baha Mar Boulevard, Nassau, Bahamas."  CTF's address is West Bay Street, P.O. Box N-10977, Nassau, The Bahamas.  Otherwise, the allegations in Complaint, ¶ 11 are true; CTF is a Bahamian company constituted under the laws of the Bahamas with its principal place of business in The Bahamas.

21.     CTF operates the Hotel; however, to my knowledge, no legal entity called "Grand Hyatt Baha Mar" exists.

22.     In order for an entity to operate a casino in The Bahamas, the Bahamian government must issue that entity a license.

23.     Neither CTF nor any Hyatt entity has the appropriate license to operate the

Resort's casino; thus, these entities are prohibited by law from having any input whatsoever in any portion of the casino's operations or activities including, but not limited to, extending casino offers to patrons like the Plaintiff and his family.

24.    CTF is not registered to do business in Florida and does not have a designated agent for service of process in Florida.

25.    CTF neither owns nor leases space for corporate offices in Florida.

26.    CTF does not own or lease any real property in Florida.

27.    CTF does not manage or operate any hotels in Florida.

28.    CTF does not hold any bank accounts in Florida.

29.    CTF has no employees in Florida.

30.    CTF does not do business in Florida.  It engages in a limited amount of advertising in the state.

31.    SWB is not registered to do business in Florida and does not have a designated agent for service of process in Florida.

32.    SWB neither owns nor leases space for corporate offices in Florida.

33.    SWB does not own or lease any real property in Florida.

34.    SWB does not manage or operate any hotels in Florida.

35.    SWB does not hold any bank accounts in Florida.

36.    SWB has no employees in Florida.

37.    SWB does not do business in Florida.

38.    Complaint ¶ 7 alleges that "[a]t all times material, Defendant, [HHC] primarily owned, maintained, operated, managed and/or controlled Defendant, GRAND HYATT BAHA

MAR in Nassau, Bahamas, the resort at which the minor Plaintiff was sexually assaulted." For the reasons set forth in the preceding paragraphs, this is false.

39.     Complaint ¶ 8 alleges that "Defendant, [HHC] entered into a management agreement with Defendant, [CTF] to co-own, co-maintain, co-operate, co-manage and/or co-control Defendant, GRAND HYATT BAHA MAR in Nassau, Bahamas, the resort at which the minor Plaintiff was sexually assaulted." This is false. CTF has no agreements with HHC or HC. All operational and management functions over the Resort are made by CTF and SWB management, officers, and employees.

40.     Complaint, ¶ 9 alleges that "[GHBM] was and is a foreign incorporated company, upon information and belief incorporated in the Bahamas, with its principal place of business in the Bahamas at One Baha Mar Boulevard, Nassau, Bahamas." This is false. To the best my knowledge, GHBM does not exist as a legal entity anywhere and is merely the trade name of the hotel property in The Bahamas that CTF and SWB operate.

41.     Complaint, ¶ 10 alleges that "Defendant, [GHBM] also and secondarily co-owned, co-maintained, co-operated, co-managed and/or co-controlled the [Resort] in Nassau, Bahamas, the resort at which the minor Plaintiff was sexually assaulted." Since GHBM does not exist, this allegation is also false.

42.     Complaint, ¶ 12 alleges that "Defendant, [CTF], co-owned, co-maintained, co-operated, co-managed and/or co-controlled [the Resort] along with Defendant, [HHC] and [GBHM]." All of these allegations are false. CTF and SWB are the only entities that have any direct role in the Resort's day-to-day maintenance, control, operations, management, or security.

43.     No other Defendant in this case owns, maintains, operates, manages, or controls any aspect of the Resort's operations.

44.     CTF owns the vast majority of the Resort property. The remainder of the property is owned by three Bahamian entities that are not named defendants in this case, have no involvement of any kind in Florida, and have no relationship with any entity that is owned in whole, or in part, by HHC or HC.

45.     Complaint, ¶ 13 alleges that "[HHC] and [GHBM] primarily operated the HYATT-corporation side of the subject joint venture (including, but not limited to, promoting the resort, sales, and promulgation of policies and procedures)… ."  This is false.  GHBM is not a legal entity.  Furthermore, none of the entities that actually do own and operate the Resort are involved in any joint venture arrangements.

46.     Complaint ¶ 15 alleges that "[HHC, GHBM and CTF], are, and at the time of the subject incident were, engaged in a joint venture to co-own, co-maintain, co-operate, co-manage and/or co-control the Grand Hyatt Baha Mar Resort in Nassau, Bahamas. To the extent these are factual allegations (as opposed to legal conclusions) they are false.  As noted previously, GHBM does not exist, and there is no contract or joint venture of any kind between HHC, HC, or CTF pertaining to any aspect of the Resort.

47.     Complaint ¶ 16 alleges that "[HHC, GHBM and CTF], are and were parties to an express or implied contract(s) and/or management agreement(s), the subject of which is ownership, operation and control of the subject resort at which the minor Plaintiff was sexually assaulted. This is false.  CTF has no agreements, express or implied, with any of the other Defendants in this case.

48.     Complaint, ¶ 17 alleges that [HHC, GHBM, and CTF] share a community of interest or a joint proprietary interest in the ownership, management, and operation of the subject resort, as factually outlined below."  To the extent these are factual allegations (as opposed to legal conclusions) they are false.  Again, GHBM does not exist, and there is no "joint proprietary interest" in the Resort between CTF and any of the other Defendants.

49.     Complaint, ¶ 17 further alleges that [HHC, GHBM, and CTF] have joint control or the right to control the operations of the subject resort, and a duty to share in the profits and losses.  All of these allegations are false.  None of the other Defendants has any right to control operations at the Resort.

50.     Complaint, ¶ 21 alleges that "… all three Defendants, from the Florida offices including 396 Alhambra Circle, Suite 788, Coral Gables, FL 33134 ("Gables Address") and in connection with Florida Statute §48.193(1)(a)(1) and/or § 48.193(2), conducted a joint venture to

co-own, co-maintain, co-operate, co-manage and/or co-control the Grand Hyatt Baha Mar Resort in Nassau, Bahamas…" through various activities.   This is false because, as noted above, CTF has no joint venture agreements with any of the other Defendants and CTF and maintains no office at the Gables Address or anywhere else in Florida.

51.     The Gables Address is an office of Hyatt of Latin America and the Caribbean, LLC ("HLAC").   HLAC is a separate corporate entity from CTF that has no duties or responsibilities relating to the Resort.   HLAC and CTF have no employees, managers, directors, or officers in common.

52.     Complaint, ¶ 21 also contains seventeen lettered subparts alleging that CTF engaged in various activities with the other Defendants at the Gables Address or "from the Florida offices."  CTF engaged in none of the listed activities at the Gables Address or anywhere else in Florida.

53.     Complaint, ¶ 23 alleges that "[a]ll three Defendants control varying day-to-day operations of [the Resort].  This is false.  The only named Defendant that controls the Resort's day-to-day activities is CTF.  Neither HHC, HC, nor GHBM controls any aspect of the Resort's day-to-day operations at the Resort.

54.     Complaint, ¶ 24 alleges that "Thierry M. Guillot is the Senior Vice President of HYATT's Latin America and Caribbean offices, which owns and/or controls the other two named Defendants as well as employ a work force in Miami, Florida for the subject joint venture, and he lives and works in Miami, Florida."   Mr. Guillot is not a CTF employee.   Furthermore, the remainder of the allegations in this paragraph are false for the following reasons:

    a.  The entity of which Mr. Guillot is VP (HLAC) does not own or control any part of CTF.

    b.  The entity of which Mr. Guillot is an officer (HLAC) does not employ anyone who controls or manages any aspect of the Resort's operations.

    c.  As noted above, there is no "joint venture" between the Resort and any of the named Defendants.

55.     CTF has no written or implied contracts with HHC or HC.

56.     Neither HHC nor HC exercises any management or operational functions over CTF.

57.     All of the Resort employees who provide security at the Resort live in The Bahamas.  None are US residents.

58.     All of the Resort employees who interacted with the Plaintiff and his family the evening of the Incident reside in The Bahamas.

59.     The Plaintiff alleges that Henry Richard Nixon sexually assaulted her.  Mr. Nixon is not affiliated with, or employed by, the Resort.  The Resort is aware that Mr. Nixon is a Bahamian citizen.

60.     In the weeks following the filing of this lawsuit, the Plaintiff released statements to at least a dozen world press organizations about the allegations in the case.  The Plaintiff also provided those organizations with photos of T.H.[1]

61.     CTF stipulates that if this matter were dismissed and if the Plaintiff re-files his claims in a Bahamian court of law, CTF would: a) appear in any such Bahamian court of law; b) receive service of process from a Bahamian court by personal service, email, and/or registered

---

[1]
- The Bharat Express News: Teenage girl 'raped by drug dealer' while staying at luxury hotel with her family
- The New Zealand Times: Teenage girl 'raped by drug dealer' while staying at luxury hotel with her family
- UK Time News: Teenage girl 'raped by drug dealer' while staying at luxury hotel with her family
- The Singapore Times: Teenage girl 'raped by drug dealer' while staying at luxury hotel with her family
- New York Post: Family of teen rape victim blames Bahamas hotel for lack of security
- Latin Times: Father Suing Posh Hotel After Drug Dealer Rapes 15-Year-Old Girl
- Bahamas Court News: Family of raped teen tourist sues hotel for $10m
- International Business Times: Drug Dealer Rapes Teen Girl Staying at Luxury Bahamas Hotel With Family on Holiday
- Bahamas Press: Family of teen rape victim blames Bahamas hotel for lack of security
- The Nassau Guardian: American family sues Baha Mar for $10 mil.
- Your News: Family of teen rape victim blames Bahamas hotel for lack of security
- Daily Star UK: Teenage girl 'raped by drug dealer' while staying at luxury Bahamas hotel with family

mail; c) waive any and all defenses pertaining to jurisdiction and venue that it may have in a Bahamian court; d) make relevant witnesses and documents in its control available to a Bahamian Court in keeping with Bahamian discovery rules; e) agree to waive any right to petition a Bahamian court to compel the Plaintiff to post a cost bond as a condition of bringing or proceeding with this lawsuit in The Bahamas; and f) respect any final judgment entered against it by a Bahamian Court (while preserving its right to appeal errors of law to the appropriate court in The Bahamas and/or London, England).

62.     SWB stipulates that if this matter were dismissed and if the Plaintiff re-files his claims in a Bahamian Court of law, SWB would: a) appear in any such Bahamian Court of law; b) receive service of process from a Bahamian court by personal service, email, and/or registered mail; c) waive any and all defenses pertaining to jurisdiction and venue that it may have in a Bahamian court; d) make relevant witnesses and documents in its control available to a Bahamian Court in keeping with Bahamian discovery rules; e) agree to waive any right to petition a Bahamian court to compel the Plaintiff to post a cost bond as a condition of bringing or proceeding with this lawsuit in The Bahamas; and f) respect any final judgment entered against it by a Bahamian Court.

# [REST OF PAGE INTENTIONALLY LEFT BLANK]



By: _____

JEFFREY BURGE

THE FOREGOING Affidavit was acknowledged before me in Nassau, Bahamas this 29

day of June, 2022 by JEFFREY BURGE who:

x    is personally known to me; **OR**

☐    has produced_____ as identification; and who:

☐    did or

☐    did not, take an oath,

and who first being duly sworn by me states that the foregoing Affidavit is true and correct.

_____

No. 808       31ˢᵗ December, 2022 Signature of Notary Public
(Commission No. & Date of Expiration)

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  22-cv-20923
King/Damian

JOHN DOE (V.H.), as parent and natural
Guardian of T.H., a minor,

Plaintiff,

v.

HYATT HOTELS CORPORATION
d/b/a Hyatt Corporation,
GRAND HYATT BAHA MAR, and
CTF BM OPERATIONS LTD.
d/b/a Baha Mar,

Defendants.
_____/

## DECLARATION OF LEIF G. FARQUHARSON, QC

I, Leif G. Farquharson, declare under penalty of perjury that the following is true and correct:

1. I am over the age of twenty-one and I am competent to make this declaration.

2. I have been retained by HYATT HOTELS CORPORATION ("HHC"), one of the Defendants in this case, to provide an opinion on whether the claims for damages made by the Plaintiff may be pursued in and determined by courts in the Commonwealth of The Bahamas. In doing so, I have been asked to provide my opinion of what Bahamian laws might apply to the Plaintiff's allegations. Notwithstanding my engagement by HHC, I understand that my duty is to provide this Court with an impartial and unbiased opinion about whether and how Plaintiff's claims can be pursued and determined in The Bahamas.

1

CASE NO. 22-cv-20923-JLK

**QUALIFICATIONS/EXPERIENCE**

3.  I am an attorney in The Bahamas, where I have practiced law since being admitted to The Bahamas Bar in 1999. In 2021, I was also admitted to the Inner Bar as one of Her Majesty's Counsel (Queen's Counsel).

4.  I hold degrees from the University of the West Indies, Barbados (LL.B) and the University of London, United Kingdom (LL.M). I also hold professional qualifications (Certificate of Legal Education) from Norman Manley Law School, Jamaica.

5.  I am currently a Partner at Graham Thompson, a leading law firm in The Bahamas, where I serve as Chair of the Litigation and Dispute Resolution Practice Group.

6.  I regularly appear before the courts in The Bahamas and have experience in, among others, the areas of administrative and public law, banking, tort and personal injuries, contractual disputes, employment, property and commercial matters.

7.  I also previously served as a member of a working group tasked with the function of reviewing and making proposals for the reform and updating of the rules relating to civil procedure in The Bahamas.

**DOCUMENTS PROVIDED/ASSUMPTIONS**

8.  In providing my opinion set forth below, I have reviewed and considered, among other things, the Complaint filed in this case. For purposes of this affidavit, I have assumed the factual representations in the Complaint to be accurate.

**OVERVIEW OF THE BAHAMIAN LEGAL SYSTEM**

9.  The Bahamas basically has a four-tiered court system, comprised of the Magistrates Court, the Supreme Court, the Court of Appeal, and the Judicial Committee of the Privy Council ("the Privy Council").

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134 | **305-800-4476**

10. The Magistrates Court is a court of summary jurisdiction which, in exercise of its civil jurisdiction, typically hears small claims where the monetary value of the dispute is less than $5,000.00. Magistrates also exercise jurisdiction under specific statutes.  Above the Magistrates Court is the Supreme Court.  This is a superior court of record and, under the *Supreme Court Act* (Ch.53), possesses *"unlimited original jurisdiction in civil and criminal causes and matters"*.  In practice, the Supreme Court hears serious criminal cases triable on indictment ("information") and all civil cases where the monetary value of the dispute exceeds B$5,000.00.  It also hears judicial review challenges and appeals against decisions of public bodies or functionaries under various statutes. It also exercises jurisdiction in admiralty, divorce and matrimonial matters and a variety of other spheres pursuant to specific statutes.

11. Appeals from decisions of the Supreme Court and from certain decisions of Magistrates generally lie to the Court of Appeal. At the apex of the Bahamian court system is the Privy Council, which usually sits in London, England, although in recent years it has sat in other jurisdictions for which it exercises final appellate jurisdiction, including The Bahamas. The Judges who sit on the Privy Council are normally also Judges of the United Kingdom Supreme Court (UKSC).  Decisions of the Privy Council are binding on all the lower courts.

12. In addition to the foregoing, there are specialist tribunals which exercise such jurisdiction as may be conferred upon them by the Constitution or statute. These include the Industrial Tribunal, the Public Service Board of Appeal, the Value Added Tax Appeal Commission, and the Utilities Appeal Tribunal.

3

CASE NO. 22-cv-20923-JLK

13. The Bahamian court system is not generally perceived as being corrupt or partial and prosecutions of judicial officers for such acts of misconduct are exceedingly rare.  It is also worth noting that the Bahamian Constitution (which is the supreme law of the land, to which all other laws are subject) explicitly provides a fundamental right of the individual to a fair hearing before an independent and impartial tribunal.

14. The Bahamian legal system is derived from English common law.  By Section 2 of the *Declaratory Act, 1799* (which still forms an integral part of Bahamian law), it is declared that the common law of England applies in The Bahamas as far as local circumstances permit subject, however, to legislative repeal or modification and subject to certain limited exceptions.  Referring to *Section 2 of the Declaratory Act*, the Privy Council in the case of *Armbrister v. Lightbourn* [2012] UKPC 40, at para.29, affirmed that the common law of England forms the primary basis of the law of The Bahamas.

15. The procedural rules that govern the litigation process for civil claims before the Supreme Court of The Bahamas are contained in the *Rules of the Supreme Court, 1978 (Ch.53)* (hereinafter, "the Bahamian Rules").  The Bahamian Rules are very closely modelled on the former English *Rules of the Supreme Court*, which governed the practice and procedure of the High Court of Justice in England prior to the implementation of the *Civil Procedure Rules, 1998*.  The Bahamian Rules address a wide range of procedural matters, from the filing of a writ of summons or other originating process to the enforcement of judgments. An exhaustive or even detailed explanation of the subjects addressed in the Bahamian Rules is beyond the scope of this declaration. However, it bears noting that some of the areas covered include: the issue and service of a writ of summons or other originating process; service of pleadings, such as a statement of claim, defence and reply, and the

4

CASE NO. 22-cv-20923-JLK

various requirements with respect to the form and content of pleadings; interlocutory applications; discovery and inspection; interlocutory injunctions and other interim relief; case management; witness statements and expert evidence; costs; and, as indicated above, the enforcement of judgments.

16. Similar to my understanding of the standard practice in the United States, when engaged in litigation in The Bahamas, the burden of proof naturally rests upon the Plaintiff who must prove his claim upon a balance of probabilities (the equivalent of a "preponderance of the evidence"). In accordance with the provisions of the *Evidence Act, 1996 (Ch.65)*, the parties to an action are entitled to adduce oral evidence via witnesses including any experts, and documentary evidence.  In addition, and even more so in recent times, the courts frequently allow witnesses to testify by videolink, particularly if they reside abroad.

17. The laws of The Bahamas are comprised of statutes passed by the Bahamian Parliament, which must conform with the Constitution.  As indicated, Bahamian law is also heavily influenced by the entirety of the common law, both in connection with the determination of rights and obligations and in connection with the interpretation of statutes.  By application of the principle of precedent, a Judge of the Supreme Court would be bound to follow relevant decisions of the Bahamas Court of Appeal or decisions of the Privy Council rendered in appeals from The Bahamas.  Where relevant, the Bahamian courts routinely rely upon case law emanating from other common law jurisdictions, especially the United Kingdom.  Though not binding, such authorities are persuasive.

## BAHAMIAN LAW AS APPLIED TO THE COMPLAINT

18. From the Complaint in this case, the Plaintiff's claims appear to be based in tort. In particular, the Plaintiff seeks relief against the Defendants based on various alleged acts of

5

negligence, which is a valid cause of action under Bahamian law for which the Plaintiff can obtain relief in The Bahamas. In my opinion, these claims would be subject to and decided in accordance with common law authorities. Certain Bahamian statutes, including the *Contributory Negligence Act* and the *Tortfeasors Act*, may also have a bearing on such claims. The requirements to be proved to establish a claim in negligence include, first, the existence of a duty of care; second, a breach of that duty, by the defendant's failure to take the care which can be reasonably expected in the circumstances; third, damage as a result of that failure (*Wallace v. Doctors Hospital Bahamas Ltd.* [2021] 1 BHS J. No.28, at para.21, following *Sutherland v. Hatton* [2002] EWCA Civ 76).

19. Litigation of the Plaintiff's claims in The Bahamas would involve three distinct phases (i) the filing and close of pleadings, (ii) a Case Management Conference (CMC), and (iii) the trial itself. The CMC is an important procedural hearing held after the close of pleadings, at which time the court will normally give directions relative to the future conduct of the action and set a trial date. The CMC directions would cover matters such as discovery and inspection of documents, the filing of witness statements and expert reports, and the filing of a statement of the facts and issues in dispute (which is usually to be agreed if possible). At the CMC the court will also give any other pretrial directions deemed necessary.

20. In my experience, a reasonable estimated length of time for a tort action to be adjudicated by the Supreme Court of The Bahamas is 18 - 24 months. This presumes the case is pursued by the attorneys involved with reasonable diligence and within the timeframes set out in the Bahamian Rules, and in compliance with the CMC directions issued by the Judge. The nature and amount of interlocutory applications made by the parties to the action, and

CASE NO. 22-cv-20923-JLK

the time associated in disposing of them, may also impact the time for the case to be completed.

21. As alluded to earlier, the Plaintiff would bear the burden of proof on his claims, which would have to be established on a balance of probabilities (the equivalent of a "preponderance of the evidence"). The Plaintiff would be entitled to adduce oral evidence via witnesses including any experts, and documentary evidence (either agreed as a result of Case Management directions or adduced through witnesses at trial).

22. The remedies available to the Plaintiff under Bahamian law would include an award of damages and costs.  In this regard, the Plaintiff if successful would be able to recover both special damages and general damages. The former are awarded to compensate for actual out of pocket expenses incurred by the plaintiff as a result of the defendant's wrong and can usually be calculated arithmetically.  This would typically include items such as lost wages, travel expenses, costs of medical care, and costs to repair or replace any damaged property.  For immediate purposes, this would encompass out of pocket expenses incurred by the Plaintiff because of the matters forming the subject of the Complaint. General damages on the other hand would encompass those losses which cannot be simply calculated but require assessment, such as pain and suffering, loss of amenities, anxiety, fear and/or nervous shock, and loss of consortium.

23. Legal costs are within the discretion of the Supreme Court. However, costs typically follow the event, with the successful party usually being awarded their costs of the action. The Plaintiff, assuming he satisfies the burden of proof and succeeds in his action, would thus likely be awarded litigation costs.

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  **305-800-4476**

24. Based on the details above and my review of the Complaint, it is my opinion that the Plaintiff would be able to prosecute his claims in The Bahamas and receive a full and fair determination of his claims. In my opinion, because the issues giving rise to the Complaint are alleged to have taken place in The Bahamas, the Supreme Court of The Bahamas would have jurisdiction to hear and determine any such claims brought by the Plaintiff.

### HENRY NIXON'S BAHAMIAN CRIMINAL CASE

25. To the best of my knowledge, Henry Nixon, the person the Plaintiff alleges assaulted T.H., has been charged criminally in The Bahamas with having violated The Bahamas' *Sexual Offences Act* (the equivalent of statutory rape in the United States), in connection with the incident detailed in the Complaint.

26. The legal age of sexual consent in The Bahamas is sixteen years old.

27. It is my understanding that Nixon contends that he is innocent and has pleaded not guilty.

28. Nixon's defense counsel, Mr. Keevon Maynard, has informed me that the criminal trial in The Bahamas is currently set for October 2022.

## [REST OF PAGE INTENTIONALLY LEFT BLANK]

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  **305-800-4476**

CASE NO. 22-cv-20923-JLK

29. I declare and state, under penalty of perjury under the laws of the United States, pursuant

to 28 U.S.C. § 1746, and the laws of The Bahamas, that the contents of this Affidavit are

true and correct to the best of my information, knowledge, and belief.

By: _____

LEIF G. FARQUHARSON, QC

**SWORN TO** at Nassau, The                    )

Bahamas, this 29th day of June                 )

A.D., 2022                                      )

_____

LEIF FARQUHARSON

Before me,

_____

NOTARY PUBLIC

DARREN O. BAIN
Counsel & Attorney-At-Law
Nassau Bahamas

9

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No: 1:22-cv-20923-JLK
King/Damian

JOHN DOE (V.H.) as parent and
Natural guardian of T.H., a minor,

      Plaintiff,

v.

HYATT HOTELS CORPORATION
d/b/a Hyatt Corporation,
GRAND HYATT BAHA MAR, and
CTF BM OPERATIONS LTD.
d/b/a Baha Mar.

      Defendants.        /

## AFFIDAVIT OF MARK DUNN

I, Mark Dunn, being duly sworn, depose and say:

1.      My name is Mark Dunn and I have personal knowledge regarding the matters set forth in this Affidavit.

2.      I am over the age of twenty-one.

3.      I am the Executive Vice President and General Counsel for Baha Mar and am employed by CTF BM OPERATIONS LTD. ("CTF"), a Bahamas corporation with its principal place of business in The Bahamas.

4.      I have read the allegations contained in the Plaintiffs' March 28, 2022 Complaint filed in this matter.

1 of 2

5.      Following the incident alleged in the Complaint, I had conversation with the Plaintiff V.H. and discussed the fact that the Resort had and would continue to cooperate with the Bahamian authorities who were investigating possible criminal charges relating to the incident referred to in Plaintiffs' Complaint.

6.      In the course of that assistance, the Plaintiff V.H. informed me that the Bahamian authorities had conducted two "rape kits" on T.H. in the course of their investigation. Based on my prior experience as a lawyer and what the Plaintiff told me, I understood this to mean that the Bahamian investigative authorities had taken V.H.'s clothing, swabs of various parts of her body for DNA evidence, and photos as well as a statement or statements from her.

7.      The Resort's investigation also revealed witnesses at the Resort who observed T.H.'s activities on the Resort on the day of the Incident prior to the Incident.

By: _____

MARK DUNN

THE FOREGOING Affidavit was acknowledged before me in Nassau, Bahamas this 30th day of June, 2022 by MARK DUNN who:

☒      is personally known to me; **OR**

☐      has produced_____ as identification; and who:

☐      did or

☐      did not, take an oath,

and who first being duly sworn by me states that the foregoing Affidavit is true and correct.

_____
Signature of Notary Public

No. 808    31st December 2022
(Commission No. & Date of Expiration)