**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No:  1:22-cv-20923-JLK**

JOHN DOE (V.H.) as parent and
Natural guardian of T.H., a minor,

      Plaintiff,

v.

HYATT HOTELS CORPORATION
d/b/a Hyatt Corporation,

HYATT CORPORATION
d/b/a Grand Hyatt Baha Mar Resort,

HYATT SERVICES CARIBBEAN, LLC
d/b/a Grand Hyatt Baha Mar Resort,

CTF BM OPERATIONS LTD.
d/b/a Grand Hyatt Baha Mar Resort, and

SKY WARRIOR BAHAMAS LTD.
d/b/a Grand Hyatt Baha Mar Resort,

      Defendants.
_____ /

**OMNIBUS ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS (DE 49) and (DE 50)**

THIS CAUSE comes before the Court upon Defendants' CTF BM Operations, LTD. ("CTF"), and Sky Warrior Bahamas LTD.'s ("SWB") (collectively, the "Bahamian Defendants") Motion to Dismiss Plaintiff's Amended Complaint (the "CTF and SWB Motion") (DE 49), filed December 15, 2022. The Court has also considered Plaintiff's Response in Opposition (DE 62), filed January 13, 2023, and Bahamian Defendants' Reply (DE 67), filed January 31, 2023.

Also before the Court is Defendants' Hyatt Hotels Corporations ("HHC"), Hyatt

Corporation ("HC"), and Hyatt Services Caribbean, LLC's ("HSC") (collectively, the "Hyatt Defendants") Motion to Dismiss Plaintiff's Amended Complaint (the "Hyatt Motion") (DE 50), filed December 15, 2022. The Court has also considered Plaintiff's Response in Opposition (DE 60), filed January 13, 2023, and Hyatt Defendants' Reply (DE 68), filed January 31, 2023. The Court being otherwise fully advised finds that both the Bahamian Defendants' Motion (DE 49) and the Hyatt Defendants' Motion (DE 50) are GRANTED for lack of personal jurisdiction.

## I.     BACKGROUND

On March 28, 2022, Plaintiff filed his Complaint as parent and guardian of his daughter stemming from the alleged sexual assault of Plaintiff's daughter on April 4, 2021, at the Grand Hyatt Baha Mar Resort in Nassau, Bahamas (the "Resort"). As a result of the Defendants' initial motions to dismiss (DEs 11, 13), the Parties were granted leave to conduct limited jurisdictional discovery. *See* DEs 23, 28.

Then, on July 21, 2022, Plaintiff filed his Amended Complaint for (1) Premise Liability; (2) Negligent Undertaking; (3) Negligent Security; (4) Negligent Failure to Warn; and (5) General Negligence. *See* Am. Compl., DE 24. Plaintiff alleges that he is a resident of Pennsylvania. *Id.* ¶ 5. He and his family including his daughter were staying at the Resort when in the early morning hours of April 4, 2021, Plaintiff's daughter left her hotel room and went to the lobby to chat on the phone with a friend. *Id.* ¶ 2. While away from her room, a 58-year-old Bahamian local lured Plaintiff's daughter to a closed poolside cabana and sexually assaulted her. *Id.* Plaintiff found his daughter during the assault and stopped the assailant. *Id.* Security was immediately alerted, local authorities were notified, and the assailant was apprehended later that day and charged with statutory rape. *Id.*

Plaintiff alleges that all three of the Hyatt Defendants are incorporated in Delaware and

have their principal place of business in Illinois. *Id.* ¶¶ 6, 12, 18. Plaintiff alleges that HHC and HC's controlled subsidiary Hyatt of Latin America and Caribbean, LLC ("HLAC") (a non-party's) office is a business registered with the State of Florida located at 396 Alhambra Circle, Suite 788, Coral Gables, FL 33134. *Id.* ¶¶ 7, 14. Plaintiff also alleged that HC (a HHC controlled subsidiary, and the parent company of HSC) employed Braedan Quigley, who lives and works in Florida as "Director of Sales and Marketing, Grand Hyatt Baha Mar". *Id.* ¶¶ 8, 13, 18–19.

According to the Amended Complaint, HHC, and/or HC, and/or HSC "co-owned, co-maintained, co-operated, co-managed and/or co-controlled all other named Defendants in this action, including the Resort in Nassau, Bahamas." *Id.* ¶¶ 10, 16, 22. Also alleged is that HHC and HC through the controlled subsidiary HSC "entered into a management agreement with Defendant, CTF BM OPERATIONS LTD. to co-own, co-maintain, co-operate, co-manage and/or co-control the Resort in Nassau, Bahamas, the Resort at which the minor Plaintiff was sexually assaulted." *Id.* ¶¶ 11, 17, 23.

Bahamian Defendants are both allegedly incorporated in the Bahamas, with their principal places of business in the Bahamas. *Id.* ¶¶ 24, 28. But both CTF and SWB entered into a management agreement with Defendants, HC and/or HSC to "co-own, co-maintain, co-operate, co-manage and/or co-control the Resort in Nassau, Bahamas[.]" *Id.* ¶¶ 27, 31. Allegedly, "CTF primarily conducted Resort operations on the ground at the subject Resort" and "SWB mainly controlled the casino-operations of the Resort." *Id.* ¶¶ 26, 29.

The five Defendants, in two groups, filed two separate motions to dismiss. Both the Hyatt Defendants and Bahamian Defendants move to dismiss arguing lack of personal jurisdiction, *forum non coveniens*, failure to state a claim under Rule 12(b)(6), and violation of Rule 8(a)(2). *See* DEs 49, 50. The Court finds that the Amended Complaint should be dismissed because it lacks personal

jurisdiction over the Defendants for the reasons stated herein. Because the Court finds that the Motions should be granted for lack of personal jurisdiction, the Court declines to address the remaining arguments. The Eleventh Circuit has explained that "where no personal jurisdiction exists and a dismissal on the merits would be with prejudice, it is particularly appropriate to dismiss on jurisdictional grounds and not address the merits." *See Courboin v. Scott,* 596 F. App'x 729, 735 (11th Cir. 2014).

## II.    LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint and determines whether the plaintiff has met his burden of establishing a prima facie case of personal jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006) (citations omitted). A prima facie case is established if the plaintiff puts forth enough evidence to withstand a motion for a directed verdict. *Id.* (citation omitted). If a defendant challenges jurisdiction by submitting affidavits contradicting the complaint's allegations, the burden shifts to the plaintiff to produce evidence supporting personal jurisdiction. *Id.* When the plaintiff's complaint and supporting affidavits and evidence conflict with the defendant's affidavits, the Court construes all reasonable inferences in the plaintiff's favor. *Id.*

The determination of whether a federal court has personal jurisdiction over a defendant involves a two-part inquiry. First, it must be determined whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's Long Arm Statute, which is codified at § 48.193, Fla. Stat. *Venetian Salami Co. v. Parthenais,* 554 So. 2d 499, 502 (Fla. 1989). Second, the Court must determine whether sufficient minimum contacts exist, in order to satisfy the due process requirements of the United States Constitution. *Id.* "[T]he constitutional

touchstone" to determine whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

## III.   DISCUSSION

### A.  Hyatt Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The first step of the two-part personal jurisdiction inquiry is for the court to determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. *See* Fla. Stat. §§ 48.193(1)-(2). Plaintiff need only establish one for this Court to have jurisdiction.

### 1.  Specific Jurisdiction

Florida Statute section 48.193(1)(a) provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from doing any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

"In order to establish that a defendant was carrying on a business or business venture in the state, . . . '[t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.'" *Sculptchair, Inc.*, 94 F.3d at 627 (11th Cir. 1996) (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975)).

Hyatt Defendants argue that HHC is a Delaware corporation, its principal place of

business is in Illinois, it has no offices, agents, or employees in Florida, HHC does not carry-on business or business ventures in Florida, nor does it hold any offices or agencies in Florida. DE 50 at 15 (citing Urbanski Aff., DE 50-2 ¶¶ 4–12, 33). Similarly, Hyatt Defendants argue that HHC's subsidiaries, HC and HSC, are both Delaware corporations with their principal places of business in Illinois. *Id.* (citing DE 50-2 ¶¶ 15, 21, 23). Hyatt Defendants argue that HSC also does not carry-on business, business ventures, advertise, have employees, manage and operate hotels or does not own or lease any office space or real property in Florida, but they concede that HC conducts business in Florida. *Id.* (citing DE 50-2 ¶¶ 15, 21, 23–30); *Id.* at 15 n.3. Additionally, Hyatt Defendants argue that no agency relationships exist between HHC and its subsidiaries HC, HSC, and non-party HLAC, such that any of their business activities in Florida would be imputable under Florida agency law. DE 50 at 16 (citing DE 50-2 ¶ 12).

In response, Plaintiff argues that "the Hyatt Defendants managed, operated and promoted the Hotel from Florida, for profit, through Florida-based HSC officers and HC employees, respectively." DE 60 at 10 (citation omitted). Specifically, Plaintiff argues that two of the three HSC officers are "at home" in Florida: Thierry Guillot who has an office in Coral Gables, Florida, and Myles McGourty who signed the Management Agreement Addendum (between HSC and CTF), and both have decision-making power with respect to contractual duties of HSC. *Id.* 4–5 (citing Hyatt Corp. Rep. Dep., DE 60-3 at 9:22–12:3, 22:5–23:14). Plaintiff also argues that HC employs a workforce in Florida, namely Director of Sales and Marketing, Grand Hyatt Baha Mar Braeden Quigley and his 11-person team (five of whom are also based in Florida) to do sales and marketing for the Hotel. DE 60 at 7, 10 (citing DE 60-3 at 32:16–33:18, Quigley Dep., DE 60-4 at 4:20–7:5). Plaintiff also argues

that HSC is simply HC's agent and alter ego because HSC is a "wholly owned subsidiary" of HC. *See* DE 60 at 11–12 (citing DE 60-3 4:18–35:21). To this point, Plaintiff asks the Court to "to pierce the HC-HSC corporate veil because they operated in concert to violate Bahamian law." DE 60 at 13.

Plaintiff heavily relies on *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, 591 F. Supp. 3d 1232 (S.D. Fla. 2022), stating that a court in the Southern District of Florida found it had specific personal jurisdiction pursuant to § 48.193(1)(a)(1) where:

> [T]he plaintiff alleged a Florida court had personal jurisdiction over a defendant cruise ship operator, which was incorporated in Virginia and had its principal place of business in Colorado. The Plaintiff alleged Florida jurisdiction over the cruise ship operator and its management company because the defendants operated their cruise ship business from the management company's headquarters in Florida. With these allegations in mind, the Court explained: [I]f Plaintiff can demonstrate that Defendant's agents operated, conducted, engaged in, or carried on a business or business venture in this state or had an office or agency in Florida, then the Court has specific jurisdiction over Defendant.

DE 60 at 13 (quotations and citations omitted). Here, Plaintiff similarly argues that "CTF appointed Florida-based HSC, under a similar Management Agreement, as CTF's "agent" to "manage and operate the Hotel", and HSC accepted that appointment" and "HSC had the right to select the General Manager for the Hotel; and the General Manager has similar control over the Hotel as Captain does over a cruise ship" *Id.* at 14–15 (citation omitted).

Merely alleging some degree of control is still not sufficient unless Plaintiff can establish a connection between the business venture and the alleged tort to satisfy the Business Venture prong of the long-arm statute. The *Sarmiento Lopez* court analyzed "connexity" because "Fla. Stat. § 48.193(1) states that the cause of action must arise from the forum-related activities." *Sarmiento Lopez*, 591 F. Supp. 3d at 1240. "Without connexity

or a causal connection, the existence of Defendant's 'business activities [in Florida] are irrelevant.'" *Id.* (citations omitted). Here, that connexity does not exist. The evidence does not demonstrate that HSC's alleged management duties are performed from Florida. Affidavit evidence shows that "[a]ll operational and management functions over the Resort are made by CTF and SWB management, officers, and employees. . . [n]o other Defendant in this case owns, maintains, operates, manages, or controls any aspect of the Resort's operations." DE 68 at 12 (citing Jefferey Burge Aff., DE 50-1 ¶¶ 39, 43).

The most that can be said is that some of HSC's officers live and work in Florida. The Court finds that while some of Defendants' officers individually may have been "at home" this is not sufficient to confer jurisdiction over all the corporate Hyatt Defendants. Although Hyatt Defendants "concede that HC conducts business in Florida and its conduct here would likely satisfy section 48.193(1)(a)(1)[,]" this Court lacks jurisdiction under the Due Process Clause. *See infra* § 2; DE 50 at 6 n.3.

Also in *Sarmiento Lopez*, the plain language of the contract between defendants created an agency relationship in performing the "total management of vessel operational and financial services." *Sarmiento Lopez*, 591 F. Supp. 3d at 1238. The same is not true here. The Management Agreement creates an agency relationship between HSC and CTF, not HSC and HC, there is no evidence of a contractual agreement between HSC and HC for HSC to serve as HC's agent. *See* DE 63-1.

Additionally, the Court will not pierce the alleged HC-HSC corporate veil. Plaintiff argues that HSC and HC are alter egos "because two out of the three HSC managing officers are based in Florida[,]" "HSC's current officer, Thierry Guillot, directs Quigley's promotional work for HC" and "under the Management Agreement, HSC agreed to 'manage

8

and operate' the Hotel 'consistent with the Hyatt Operating Standards[.]'" DE 60 at 12 (citations omitted). However, the evidence supports that HC and HSC are legally distinct corporations with their own boards of directors, officers, books of account, and make separate tax filings. DE 68 at 8–9.

### 2. Specific Jurisdiction Due Process

The Court's analysis of Due Process depends on: (1) Defendant's purposeful availment of the forum state; (2) the cause of action arising out of the activities of which Defendant purposefully availed himself; and (3) reasonable foreseeability of Defendant being haled into court in the forum state. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000) (citing *Burger King Corp.,* 471 U.S. at 475). The Court must also determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice, namely "(a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies." *Id.* at 1251 (citing *Burger King Corp.*, 471 U.S. at 466).

Hyatt Defendants argue that the Amended Complaint does not clearly allege how or why HHC or HSC purposely availed themselves in Florida,[1] but also fails to allege how the alleged tort arose from, or relates to, HHC, HC, or HSC's contacts with Florida. DE 50 at 25. The Court will not look at the Due Process arguments regarding HHC and HSC, since the Court has already found no specific jurisdiction, it need not continue with a Constitutional analysis. *See Moreno v. Carnival Corp.*, 488 F. Supp. 3d 1233, 1239 (S.D. Fla. 2020) (citing

---

[1] However, Hyatt Defendants concede that HC has generally availed itself of the privileges of conducting activities in Florida. DE 50 at 25 n.7.

*Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999).

In *Sarmiento Lopez*, the court found that the exercise of specific jurisdiction would not violate Due Process because "while Defendant correctly notes that it has no employees in Florida and is not registered to conduct business in Florida, Defendant purposefully availed itself to Florida when it hired CMI as its agent to perform essential aspects of its business operations in Florida." *Sarmiento Lopez*, 591 F. Supp. 3d at 1242. Additionally, that court found that "the actions or inactions of Defendant's agent in Florida led to Plaintiff's cause of action" and "given the long-standing principal-agent relationship between [defendant] and its Florida agent [], it was foreseeable that [defendant] could be haled into a court in Florida." *Id.*

Even with the Hyatt Defendants admitting HC conducts business in the jurisdiction, without the alleged tort arising out of or relating to HC's contacts with Florida, Due Process prevents the exercise of personal jurisdiction over the Hyatt Defendants. The alleged tort arises from the management of the hotel, which affidavit evidence shows "[a]ll operational and management functions over the Resort are made by CTF and SWB" not the Hyatt Defendants. *See* DE 50-1 ¶¶ 39, 42, 43. Therefore, specific jurisdiction over the Hyatt Defendants would not comport with Due Process.

The Plaintiff's cause of action does not arise out of, or relate to, Defendant HC's forum contacts. As outlined in this Order and Hyatt Defendants' Motion, HC has employees, including Braeden Quigley, who do marketing work in Florida, and take frequent trips to the Resort. *See* 50 at 13. However, the marketing activities in the state of Florida are not connected to Plaintiff's causes of action, nor is it the type of marketing that "would lead a person to reasonably expect the possibility of ensuing litigation in a Florida court should some type of dissatisfaction or complications arise." *Sculptchair Inc.*, 94 F.3d at 631.

Further, exercising personal jurisdiction over HC would offend traditional notions of fair play and substantial justice. Finding personal jurisdiction would be forcing HC to litigate in a foreign state where it has a limited business and corporate management presence. Plaintiff is not a Florida resident, HC is not incorporated in Florida, and all that can be shown is HC conducts marketing in Florida. These factors all weigh in favor of holding that exercising jurisdiction will not comport with traditional notions of fair play and substantial justice.

3.  <u>General Jurisdiction</u>

Florida Statute section 48.193(2) provides:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Florida courts have defined the term "substantial and not isolated activity" as used in Section 48.193(2) to mean "continuous and systematic general business contact" with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999)). Therefore, the exercise of general jurisdiction is only proper when the nonresident defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted). The reach of this part of Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). Separate analyses of general jurisdiction and due process therefore are unnecessary. *Id.*

Hyatt Defendants argue that Plaintiff fails to make prima facie showing that the Hyatt

11

Defendants are engaged in any substantial activity within Florida. DE 50 at 17. Specifically, they argue that Plaintiff's Amended Complaint erroneously concludes that HHC owns and operates all Hyatt-branded hotels worldwide, confuses HHC with its subsidiaries, focuses too closely on a Florida-resident employee of HC (Quigley), and conflates other non-party entities' business activities (HLAC). *Id.* (citing Am. Compl. ¶¶ 6, 41; DE 50-2 ¶¶ 5, 7–12).

Plaintiff argues that the Hyatt Defendants have had continuous and systematic contacts within Florida because, again, two of the three HSC officers are "at home" in Florida who are key decision-makers for the Resort under HSC's Management Agreement duties, and HC employs a workforce in Florida to do sales and marketing so Hyatt Defendants earn profit. DE 60 at 17–18. Plaintiff additionally argues that HC and HSC perform similar business functions, HC does not employ anyone else, other than Quigley, to do promotional and marketing work for the Hotel, and the length of time the Hyatt Defendants performed these business functions is continuous and systematic since the Resort began operations in 2017. *Id.* at 18 (citations and emphasis omitted).

To support its agency-based general jurisdiction argument, Plaintiff relies on *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). In *Meier*, plaintiff alleged that he was struck by a commercial motorboat in the Bahamas and defendants moved to dismiss arguing they were not subject to personal jurisdiction in Florida because they are Bahamian corporations. *Id.* at 1268. Ultimately, the Eleventh Circuit held that plaintiffs sufficiently established that the Bahamian defendants, through their own actions and through the actions of the Florida Subsidiaries, engaged in "substantial and not isolated activity" within Florida. *Id.* at 1274 (citation omitted). Plaintiff argues defendants in *Meier* are similar to the Hyatt Defendants here: "i) having Florida-based subsidiaries; ii) used

12

those Florida-based subsidiaries to advertise and market bookings for the Bahamian hotel; and iii) established 'financial ties between the [Bahamian-incorporated entities] and the Florida subsidiaries [that] suggest a relationship far beyond service contracts.'" DE 60 at 18 (citing *id.* at 1272).

Defendants argue that *Meier* is factually and legally inapposite. DE 68 at 6. First, in *Meier*, plaintiff alleged it was the Bahamian defendant that owned the Florida subsidiaries and used those subsidiaries to conduct business in Florida. *Id.* Here, the Bahamian based defendant is CTF, not HSC or HC which inverts the *Meier* factual pattern. *Id.* Secondly, Defendants argue that "*Meier's* general jurisdiction holding was effectively overruled by *Daimler.*" *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 159 (2014)).

Defendants are correct in pointing out how *Meier* is inapplicable here. "Since *Daimler*, several courts in this District have strongly suggested that that rejection has abrogated the agency theory advanced by *Meier* and its progeny." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1348 (S.D. Fla. 2017) (collecting cases). And "there can be no question that *Daimler* is the law of the land when it comes to general personal jurisdiction." *Id.* at 1349.

In *Daimler*, Argentinian plaintiffs filed their suit in California against a German corporation alleging personal jurisdiction over defendant's United States subsidiary and its indirect contacts with California. *Daimler*, 571 U.S. at 117, 119. The court held that defendant was not subject to general jurisdiction in California based on the California contacts of defendant's subsidiaries because the "paradigm all-purpose forums" where a corporate defendant is essentially at home are its place of incorporation and its principal place of business. *Id.* at 136–37. And only in the "exceptional case" will a corporation's

activities in a forum other than its place of incorporation or principal place of business be "so substantial and of such a nature as to render the corporation at home in that state." *Id.* at 139 n.19. Interestingly, in *Daimler's* concurring opinion, *Meier* is specifically cited to warn that "[u]nder the majority's rule, for example, a parent whose child is maimed due to the negligence of a foreign hotel owned by a multinational conglomerate will be unable to hold the hotel to account in a single U.S. court, even if the hotel company has a massive presence in multiple States." *Id.* at 159 (Sotomayor J., concurring).

An example of an "exceptional case" is *Perkins*, where defendant, a Philippines mining company, ceased its mining operations during the Japanese occupation of the Philippines in World War II and the president of the company moved to Ohio, where he kept an office and oversaw the work of the company. *See Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 448 (1952); *See also Daimler*, 571 U.S. at 130 (explaining this was "because Ohio was the corporation's principal, if temporary, place of business." (quotation omitted)). However, the Eleventh Circuit has held that no exceptional situation existed where the defendant had a Florida bank account, had two Florida addresses, purchased insurance from Florida companies, filed financial statements with the Florida Secretary of State, and joined a trade organization based in Florida. *See Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201 (11th Cir. 2015).

None of the Hyatt Defendants are incorporated or have their principal place of business in Florida. HHC, HC, and HSC are all incorporated in Delaware and their principal places of business are in Illinois. DE 50-2 ¶¶ 4, 15, 23, 32. The "paradigm all-purpose forums" do not apply here, so for general jurisdiction to exists, there must be an "exceptional case." Here, the Court finds there is no such exceptional case. The facts in this case are much

more like *Carmouche* than *Perkins*.

Plaintiff argues that "Hyatt Defendants used Florida-based HSC, as HC's wholly owned subsidiary, to manage and operate the Hotel. . . HC used its Florida-based employees (agents) to promote, market and advertise the Hotel from Florida . . . [and], the financial ties between the Hyatt Defendants and CTF/the Hotel suggest a relationship far beyond service contracts." DE 60 at 19 (quotations omitted). These facts are not sufficient to confer jurisdiction. Even if the Court could confer general jurisdiction over one of the Hyatt Defendants, this would not impute jurisdiction over the other two. There are limited points of connection between the Hyatt Defendants in the jurisdiction, such as HC using a marketing team based in Florida, but this is not an exceptional case where the Court should impute jurisdiction collectively over all the Hyatt Defendants.

To support his agency-based theory of jurisdiction, Plaintiff also cites to *Barriere v. Juluca*, where "[t]he Court held it had general personal jurisdiction over the defendant hotel operator based on facts of its Florida-based hotel management and promotion that are almost identical to those presented here[.]" DE 60 at 22–23 (citing *Barriere v. Juluca*, Case No. 12-cv-23510-FAM, 2014 WL 65283, at *6 (S.D. Fla. 2014)). However, the court later clarified itself stating "[i]n *Barriere*, this Court held that the defendant had not sufficiently challenged jurisdiction because it failed to respond to the allegations in plaintiff's complaint with affidavits." *Chimene v. Royal Caribbean Cruises Ltd.*, Case No. 16-cv-23775-FAM, 2017 U.S. Dist. LEXIS 65965, at *5 (S.D. Fla. 2017). The court therefore "accept[ed] Plaintiffs' allegations absent any challenge that would shift the burden[.]" *Id.* (citations omitted). Here, the Parties were granted leave to conduct jurisdictional discovery and both sides have presented to the Court affidavits and a plethora of additional evidence. As such, this Court

does not have personal jurisdiction over the Hyatt Defendants.

### B. Bahamian Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

#### 1. Specific Jurisdiction

Plaintiff specifically cites Florida Statute § 48.193(1)(a)(1) and/or § 48.193(2) when he alleges that all Defendants "from the Florida headquarters including Mr. [Braeden] Quigley's office and those at 396 Alhambra Circle, Suite 788, Coral Gables, FL 33134, . . . conducted a joint venture to co-own, co-maintain, co-operate, co-manage and/or co-control the Resort in Nassau, Bahama. . . ." Am. Compl. ¶ 39. In further support of specific jurisdiction, Plaintiff alleges that "the Defendants used [Hyatt Corporation's] Director of Sales and Marketing, Braedan Quigley, to create, design, edit, approve and/or distribute offers relating to the subject Resort that ultimately enticed Plaintiff to become a guest at the Resort in April 2021 and at the time of the subject incident." *Id.* ¶ 40. Also, "Quigley performed such promotional work for the Resort and for the benefit of all Defendants named herein from his office and Defendants' Florida headquarters." *Id.*

Defendants argue that no basis for specific personal jurisdiction exists in this case since "no sales or marketing in which Mr. Quigley played a role ever reached the Plaintiff or induced his family to come to the Resort." DE 49 at 8. Defendants further argue that "[e]ven if Mr. Quigley's sales activities had been responsible for bringing the Plaintiff to the Resort, even more direct connections such as ticket sales have been deemed insufficient to establish specific jurisdiction." *Id.* (citing *Limardo v. Corporacion Intercontinental*, 590 F.Supp. 1109, 1111 (S.D. Fla.1984) (holding that "alleged negligence on the part of the hotel in the Dominican Republic has no real connection to the contractual arrangements for reservations made with an office of the hotel in Miami.") and *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-cv-21897-Cooke, 2013 WL 1100028, at *5 (S.D. Fla. Mar. 15, 2013) (holding that even if "jurisdictional discovery would

allow Plaintiff to introduce evidence that [defendant] advertised and sold tickets for the []
excursion on its website and aboard the Explorer of the Seas, processed the purchases in Florida,
collected the money from its passengers, retained a profit as part of joint venture or agency
relationship, . . . those contacts would still not be sufficient" under the long-arm statute. (citation
omitted)).

As stated in his Response, the crux of Plaintiff's specific jurisdiction argument is that "the
Defendants jointly operated, conducted, engaged in and carried on a business venture in Florida,
and had employees, officers and offices in Florida to accomplish their business goals, for profit."
DE 62 at 3. Specifically, Plaintiff argues that "CTF's managing officers – the ones that manage
key financial and legal decisions for CTF and the Hotel – are Florida residents and have an office
in Coral Gables, FL[.]" *Id.* (emphasis omitted). The Response states that Patrick Gaffney has
financial decision-making power over CTF and the Resort; and he is based in Florida. *Id.* at 4.
Indeed, the testimony of CTF and SWB's Corporate Representative revealed that Mr. Gaffney
"reviews and approves the annual operating budgets . . . has control over several of our bank
accounts" and with the corporate representative and president, is involved with "talking through
the operations and making decisions[.]" *Id.* at 5–6 (citing CTF and SWB Corp. Rep. Depo, DE 62-
1 at 28:14-30:5, 32:1-33:3. The Response further states that Brad Hornbacher, who is based in
Florida, has legal decision-making power over CTF and the Resort. DE 62 at 6. According to the
testimony of CTF and SWB's Corporate Representative, Mr. Hornbacher is general counsel and
"[h]is primary focus is on big contracts and contractual activity[,]" things "like hotel management
agreements, [or] major lawsuits[.]" *Id.* (citing DE 62-1 at 22:3-10, 22:11-19).

Plaintiff once again relies on *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, where the court
held that it had specific personal jurisdiction over cruise ship operator defendants by virtue of the

activities of its agents in Florida. 591 F. Supp. 3d 1232 (S.D. Fla. 2022).  In *Sarmiento*, the plain language of the contract between defendants indicates that the Virginia-based defendant agreed that Florida-based defendant would act as its "agent" in performing the "total management of vessel operational and financial services." *Id.* at 1238. Therefore, defendant knew that the Florida-based defendant would act for it, and defendant also maintained control over the action of its "agent" by reserving the right to terminate the contract. *Id.*  Plaintiff likens these facts to the instant case. "The Baha Mar Defendants' Corporate Representative confirmed that both Gaffney and Hornbacher did work for the Hotel and Resort from Florida and pursuant to the Management Agreement . . . like the Florida-based managerial agent in *Sarmiento Lopez*." DE 62 at 7. Similarly, Plaintiff cites the management agreement between CTF and Hyatt Services Caribbean, LLC, to argue that "[w]hile CTF owned the Hotel on paper, CTF 'appointed Hyatt, and Hyatt has accepted the appointment, as agent for and on behalf of Owner [CTF], to manage and operate the Grand Hyatt Baha Mar [Hotel].'" *Id.* at 8 (citing DE 63-1 at 1 (emphasis omitted)).

Subsection (1)(a)(1) confers personal jurisdiction over a non-resident defendant who is "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." Fla. Stat. § 48.193(1)(a)(1). The Court finds that Defendant CTF is an agent of Hyatt Services Caribbean, LLC. The management agreement between CTF and Hyatt Services Caribbean, LLC (filed under seal in DE 63-1) makes clear that there was an agency relationship between these two Defendants. However, as for Defendant SWB, Plaintiff "makes no reference at all to any SWB venture in Florida[.]" DE 67 at 3. SWB is not a party to the Management Agreement and based on the evidence it cannot be said there was an agency relationship between SWB and Hyatt Services Caribbean, LLC.

The second part of determining whether this Court has specific jurisdiction over Bahamian Defendants pursuant to Fla. Stat. § 48.193(1), involves "connexity." *See Sarmiento Lopez*, 591 F. Supp. 3d at 1240 (citation omitted). Bahamian Defendants, in their Reply, state that a joint business venture did exist between CTF, SWB and the Hyatt Defendants, but that under *Sarmiento*, Plaintiff fails to plead facts sufficient to establish a connection between the venture and the alleged sexual assault in the Bahamas. DE 67 at 2–3. Plaintiff points out that the *Sarmiento* court found a causal connection because "the defendants' Florida-based agent was responsible to vet, hire and train the cruise ship's doctor; and the plaintiff alleged that the shipboard doctor failed to provide him with proper treatment, which caused and/or aggravated his resulting bodily injuries." DE 62 at 13 (citing *Sarmiento Lopez*, 591 F. Supp. 3d at 1240).

The Court finds that the cause of action does not arise from the forum-related activities. Here, it can be said that the Management Agreement between HSC and CTF agreed to "arrange for the purchase of . . . security protection . . . and other services necessary for the operation of each of the Hotels. . . ." DE 62 at 13 (citing Mgmt. Agmt. & Addend., pg. 48, Section 4.5(e)). However, the jurisdictional discovery reveals that no such control took place from Florida. Evidence cited in Plaintiff's Response primarily focuses on connecting two individuals, Brad Hornbacher and Patrick Gaffney, to Florida. DE 62. at 4–5. Neither of these individuals had any connection with purchasing, or training security protection for the Resort. Patrick Gaffney has financial decision-making power over CTF, and Brad Hornbacher has legal decision-making power over CTF. *Id.* There is nothing in the jurisdictional discovery taken that can establish a connection between the "at home" Florida officers and the security for the hotel. Similarly, another employee "at home" in Florida, Mr. Quigley, was the Director of Sales and Marketing for the

Resort which is not connected or related to the security functions of the hotel, and he is an HC employee, not HSC or CTF.

Plaintiff also argues that "HSC officer" Myles McGourty, was "at home" in Florida when he executed the management agreement, and the HSC officer "who currently fulfills HSC's obligations under the Management Agreement," Thierry Guillot, is currently "at home" in Florida. DE 62 at 8. This strengthens Plaintiff's argument that two out of three HSC officers are "at home" in Florida, but this does not confer specific jurisdiction, nor does it show connexity or a causal connection because the cause of action must arise from the forum-related activities.

### 2.   Specific Jurisdiction Due Process

Because the long-arm statute does not confer personal jurisdiction over the Defendants, the Court need not reach the second step of the two-step inquiry to determine whether personal jurisdiction is proper under the Due Process Clause of the U.S. Constitution. *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010). "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Santamorena v. Ga. Military Coll.*, 147 F.3d 1337, 1343 (11th Cir. 1998). Therefore, the Court will not address the Parties' specific jurisdiction due process arguments.

### 3.   General Jurisdiction

The Bahamian Defendants argue that in light of *Daimler*, to confer general jurisdiction, it must be shown that they are "a surrogate for the place of incorporation or head office." *Daimler*, 571 at 130 n.8. However, SWB's only connection to Florida is limited advertising, and CTF's sole activities in Florida "consist of sales and advertising that benefit a portion of the Resort conducted

by someone who happens to be a Florida resident but is not a CTF [] employee or even an employee of a Florida corporation." DE 49 at 10.

Plaintiff again argues *Meier* and *Juluca* apply here, and further that "Plaintiff is not relying exclusively on agency principles for jurisdiction . . . [but also] that CTF is "at home" in Florida because its Florida-based officers (Gaffney and Hornbacher) make important financial and legal decisions for the Hotel from Florida." DE 62 at 23.

The Court has already analyzed how *Meier* should be applied here in light of *Daimler* and how *Juluca* is distinguishable in dealing with general jurisdiction in Hyatt Defendants' Motion. *See supra* § A(3). The same conclusion applies here, the "paradigm all-purpose forums" (defendants' place of incorporation and its principal place of business) does not apply here. *Daimler*, 571 U.S. at 137. Plaintiff alleges that he is a resident of Pennsylvania, and Defendants CTF and SWB are incorporated in the Bahamas, with both their principal place of business in the Bahamas. Am. Compl. ¶¶ 5, 24, 28. A such, the Court finds that it does not have general jurisdiction over the Bahamian Defendants.

Also, the Court finds that there is no "exceptional case" where CTF or SWB's activities in Florida are "so substantial and of such a nature as to render the corporation at home in that state." *Daimler*, 571 U.S. at 139 n.19. While a number of officers from Defendants may be located in Florida, this does not constitute affiliations with Florida "so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 127 (citation omitted).

Accordingly, it is **ORDERED, ADJUDGED and DECREED** that Bahamian Defendants' Motion to Dismiss **(DE 49)** be, and the same hereby is, **GRANTED.** It is **FURTHER ORDERED** that the Hyatt Defendants' Motion **(DE 50)** is hereby **GRANTED.** Plaintiff's Amended Complaint **(DE 24)** is hereby **DISMISSED with prejudice**. Any other pending motions are hereby **DENIED**

as moot; and the Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice

Building and United States Courthouse, Miami, Florida, this 17th day of October 2023.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:   **All Counsel of Record**
      **Clerk of the Court**